**James ESTEP, Sr., Movant,**

v.

**Joseph WERNER, Mildred Werner, David Werner, and W & E Welding Co., Respondents.**

**No. 88–SC–226–DG.**

Supreme Court of Kentucky.

Sept. 28, 1989.

As Modified on Rehearing Nov. 30, 1989.

David A. Koenig, Florence, for movant.

Robert D. Monfort and Clyde W. Middleton, Covington, for respondents.

HOOD, Special Justice.

This appeal arises from an action for fraud and wrongful discharge [1] filed in the Kenton Circuit Court by an employee/shareholder of the closely-held corporation that discharged him. The relevant facts that pose the issues in this appeal may be summarized as follows.

---

**1.** Movant's Third–Party Complaint contained other allegations that were addressed and dismissed by the trial court and are not part of this appeal.

In the early 1950s movant James Estep ("Estep") and respondent Joseph Werner formed a partnership engaged in the manufacture of decorative iron railings. The business was incorporated on December 24, 1963, and became known as W & E Welding Company, Inc. (the "Company"). Joseph Werner and Estep were each issued forty-nine shares of common stock, and Mildred Werner, wife of Joseph Werner, was issued two shares of common stock. Mildred Werner became the President, Joseph Werner, the Vice President, and Estep, the Secretary of the Company. (Hereinafter Joseph Werner and Mildred Werner are jointly referred to as the "Werners.")

The Company operated out of industrial buildings constructed on three lots owned by the Werners. The Werners leased the three lots and the buildings thereon to the Company. The leases for the property were signed by Joseph Werner and Mildred Werner, individually, as Lessors, and by the Company, as Lessee, by Mildred Werner, as President. Testimony was presented at trial that the corporate minutes of the Company were altered to evidence the Company's obligations to pay rent to the Werners. However, unrebutted testimony from Estep's own witness, Austin Mann, a real estate appraiser, indicated that the rent received by the Werners from the Company was less than its fair market rental value.

In the 1970s, the Company hired David Werner and Bruce Werner, sons of the Werners, to work for the company. The Company began experiencing financial difficulties in the early 1980s due to a decline in the demand for its product. In 1981, Estep was terminated from his employment with the Company. The trial court found that at the time Estep was terminated "everyone was terminated," including Joseph Werner. Only Mrs. Werner remained on the payroll.

In January of 1983, David Werner formed a Company known as AOIF, conducting essentially the same business as W & E Welding. In March of 1983, the Werners, over the objections of Estep, set in motion plans to liquidate W & E Welding. In September of 1983, the Company went into bankruptcy.

Within one year from the formation of AOIF, but after the bankruptcy of the Company, AOIF assumed the contracts of the defunct W & E Welding, purchased from the Company's trustee in bankruptcy all of its industrial equipment, and operated its business at the former location of W & E Welding. Many of the employees of W & E Welding, including Joseph and Mildred Werner, also became employees of AOIF. The court made no finding that the Werners, or their sons, failed to use their best efforts to make W & E Welding succeed or attempted to direct the Company's business to the newly formed AOIF.

The Special Commissioner made additional findings relating to the nature of the relationship between the Werners and Estep as shareholders in a closely-held corporation. The Special Commissioner stated that the relationship between the parties was similar to a partnership:

> Although the facts indicate that the relationship between the Plaintiff, Estep, and Defendants, Joe Werner and Mildred Werner, is that of minority shareholders, it is found that this closely held corporation and the relationship between the parties is similar to a partnership relationship.

After a two-day evidentiary trial, the Special Commissioner ruled that the actions of Joseph Werner in terminating Estep constituted a violation of Joseph Werner's fiduciary duty to Estep as a fellow shareholder in a closely-held corporation. As damages, the trial court awarded Estep lost wages from 1981 (the date of termination) through 1985. In addition, Estep was awarded punitive damages from the Werners for their failure to disclose to him that the Company leased property from the Werners.

The Court of Appeals reversed the judgment as to both awards. We affirm the decision of the Court of Appeals.

## I.

The first issue before the Court is whether the trial court properly found that Jo-

seph Werner breached his fiduciary duties as a shareholder to his fellow shareholder, Estep, in a closely-held corporation by terminating Estep from his employment with the Company. It should be noted at the outset that movant did not claim "breach of fiduciary duty" in connection with the termination of his employment with the Company in the original complaint. Count Three of the Third–Party Complaint alleges breach of an employment agreement. Even the Post–Trial Brief of the movant does not address breach of any type of fiduciary duty but refers to an employment agreement between Joseph Werner and Estep, stating:

> However, it is not the verbal agreement between these two partners upon which this plaintiff relies for James Estep's termination was but one of a fraudulent plan perpetrated upon him by the three defendants and his termination is wrongful for that reason.

The report of the Special Commissioner is the first reference to Estep's termination as a breach of fiduciary duty. We do not believe that this action should be decided in terms of breach of fiduciary duty as the facts of this case do not justify such a holding.

■ The Court of Appeals did not specifically address this issue but held that KRS Chapter 271A [2] is "the appropriate chapter to apply in these business dealings as this is clearly a corporation under the laws of Kentucky." We do not deny the applicability of KRS 271A to corporations but do note, however, that there may be certain nonstatutorily imposed fiduciary duties that exist among shareholders in closely-held corporations. For example, in *Aero Drapery of Kentucky, Inc. v. Engdahl,* Ky., 507 S.W.2d 166 (1974) the court held that a fiduciary duty is owed by a director to the corporation even though such a duty is no longer imposed by statute. In *Aero,* the plaintiff alleged that a ten percent shareholder, director and treasurer of the company occupied a fiduciary relationship to the company. The court, referring to a prior repealed statute that imposed such a

duty, stated, "Even without this statute there existed a fiduciary relationship between Engdahl [the stockholder, officer and director] and Aero [the company]." *Id.* at 168. Movant has cited numerous cases and jurisdictions outside of this Commonwealth that recognize the existence of fiduciary duties of utmost good faith, fair dealing, and full disclosure among shareholders in a closely-held corporation. However, we feel it is not necessary to discuss the existence and extent of such duties in the State of Kentucky in this opinion. The trial court incorrectly based its wrongful discharge award on "breach of fiduciary duty." Based upon the facts preserved in this appeal there is no justification for finding a breach of any type of fiduciary duty.

The Special Commissioner made the following findings relating to the termination of Estep from his employment. First, a significant downturn in the Company's business resulted due to a lack of demand. The Special Commissioner stated that "this was a very real business downturn and not one created by David Werner or his parents." Even more significant, the court found that in 1981, when Estep was discharged from the Company, Joseph Werner was also discharged. Certainly, Joseph Werner did not owe Estep a fiduciary duty to keep Estep employed when Werner, and numerous other employees, were also terminated from employment.

In addition, the Special Commissioner determined that the purchase of the assets of the Company by David Werner out of bankruptcy was legitimate. The sale was supervised and approved by the bankruptcy court, and the sale did not preclude participation by other bidders. Moreover, there was no evidence that there was anything improper about the bankruptcy.

■ The trial court seemed to base its decision on the fact that Werner and Estep "made a commitment over twenty five years ago that each would remain employed so long as there was a company and that Joe Werner had a fiduciary duty to his partner, James Estep, to assure that James

---

2. Recently repealed and replaced as KRS 271B.

Estep would be given the same opportunity as he in running the business and to live up to the agreement that was entered into more than twenty-five years ago that each would remain employed so long as there was a company."

Even if such an agreement could be enforced as fiduciary duty or a contractual relationship, the fact remains that Werner and Estep were both terminated from the Company in 1981. Joseph Werner's subsequent employment with AOIF does not constitute any type of breach of fiduciary duty. By the time Joseph Werner became employed with AOIF, W & E Welding Company Inc. was no longer in business; there was no company with which to be employed. Moreover, Estep failed to show that there was any fraud or violation of fiduciary duty by the defendants in connection with the sale of the corporate assets by the trustee in bankruptcy to their son, David Werner. Based upon these facts, we find that even if the Werners and Estep owed each other some type of fiduciary duty, the facts do not support a finding of a breach of said duty and, further, no wrongful discharge.

## II.

■ The second issue before this Court is whether the Court of Appeals properly reversed the trial court's award of punitive damages for "failure to disclose personal dealings." Evidence was presented at the trial court level that the Company leased real estate from the Werners throughout the years and that the rental amounts charged to the corporation were concealed from the movant. However, the Commissioner made no finding that the corporation or Estep sustained any damage from the leasing of the property from the Werners. In fact, Estep's own witness testified that the fair rental value was about $2,000 per month. When informed that the Werners had never charged more than $667.46 per month, the witness agreed that the corporation was getting a bargain. In addition, the Special Commissioner found that the Company had a history of sloppy record keeping and that Mr. Estep never objected to these business practices. The rule of law recognized in this state is that, "if the plaintiff has suffered an injury for which compensatory damages might be awarded, ... he may in a proper case recover punitive damages." *Lawrence v. Risen*, Ky. App., 598 S.W.2d 474, 476 (1980). Movant failed to demonstrate that he suffered any injury. Thus, the award of punitive damages was improper.

Based upon the foregoing, the decision of the Court of Appeals is hereby affirmed.

STEPHENS, C.J., and GANT and VANCE, JJ., concur.

LEIBSON, J., dissents in a separate dissenting opinion in which LAMBERT, J., joins.

WINTERSHEIMER, J., not sitting.

LEIBSON, Justice, dissenting.

Respectfully, I dissent.

The Majority Opinion errs on a number of important points. The decision of the Court of Appeals should be reversed, and the Judgment of the trial court reinstated.

This case was tried before a Special Commissioner. His Findings of Fact and Recommended Order were adopted in the Judgment of the trial court (with certain corrections not relevant to this appeal). Substantial evidence heard at trial was never transcribed and is not part of the appellate record. Nevertheless, erroneously, the Court of Appeals, and now our Court, holds the evidence insufficient to "justify" the "holding". This is nothing more than a substitution of fact finding.

The trial court's Findings of Fact should not be set aside "unless clearly erroneous" (CR 52.01), which requires a complete transcript of evidence. As stated in *Porter v. Harper*, Ky., 477 S.W.2d 778, 779 (1972), absent a record the court is "required to assume that the evidence supports the finding[s] of the lower court."

Further, the statement of facts in the Majority Opinion, as did the Court of Appeals, leans heavily upon appellate fact-finding, findings that supposedly should have been made, whereas CR 52.04 pro-

vides that a "final judgment shall not be reversed or remanded because of the failure of the trial court to make a finding of fact on an issue essential to the judgment unless such failure is brought to the attention of the trial court by a written request for a finding on that issue or by a motion pursuant to Rule 52.02." Respondents' objections to the Commissioner's Report did not preserve the present findings of error. At oral argument respondent's counsel *conceded* that "at this point" respondents do *not* "claim the evidence is insufficient to support the findings of the trial court." Counsel's position was that the trial court made certain findings and misapplied the law. As stated in Bertelsman and Philipps, 7 Kentucky Practice, Rules of Civil Procedure, 4th ed., p. 248:

"A party who contends that a judgment is not supported by the findings of fact must petition the court for specific findings....

The failure to make a finding or findings will not justify reversal or remand in the appellate court unless such failure has been brought to the attention of the trial court."

The issues before us arise by reason of a third-party complaint filed by Estep against Joseph and Mildred Werner[1] charging the Werners, as the majority stockholders in a closely-held corporation, with various acts of fraud, bad faith and self-dealing in corporate property, and in depriving Estep of his employment with the corporation by "contrived manipulation and willful, malicious, interference with Estep's contract rights."

Our Majority Opinion states:

"It should be noted at the outset that movant did not claim 'breach of fiduciary duty' in connection with the termination of his employment ... in the original complaint."

Since W & E Welding Co., not the movant, filed the original Complaint, this quote makes little sense. Movant did appropriately charge that he "has been deprived of his employment," as stated above, in his Third Party Complaint against the Werners, and he reenforced this charge in paragraph 2 of Count Four, stating:

"This fraudulent conspiracy to deprive Estep of his employment rights [with the corporation] amounts to a tortuous [sic.] interference with said contract rights...."

The principal issue was whether the movant was divested of his employment and his interest in the corporation by a downturn in the business or by the self-dealing manipulation of his co-shareholders. The Commissioner found:

"The net effect of this transaction is that Joe Werner, the former equal partner of James Estep, has an opportunity to continue to work and James Estep became unemployed. Joe Werner had a fiduciary duty to his partner, James Estep, to assure that James Estep would be given the same opportunity as he in the running of the business and to live up to the agreement that was entered into more than 25 years ago that each would remain employed so long as there was a company. The effect of what has occurred is that Joseph Werner has remained employed throughout the transaction and James Estep has been terminated."

Movant proved his claim, and proved damages for such deprivation, to the satisfaction of the trial court. We err to set aside the trial court's Findings and Judgment in this respect on the basis of the incomplete, inadequate and insufficient record before us.

The principal error in the Majority Opinion is its conclusion that "it is not necessary to discuss the existence and extent of" "fiduciary duties of utmost good faith, fair dealing, and full disclosure among shareholders in a closely-held corporation" "in the State of Kentucky in this opinion." It was precisely to review this issue that we accepted discretionary review, and the issue is squarely before us.

---

1. The original Complaint filed by W & E Welding Co. against Estep was either dismissed or abandoned, and never came to trial.

The whole thrust of Estep's case, as presented in the Special Commissioner's Findings of Fact, was manipulation of the corporation to destroy the value of his shares, which were 49% of the common stock, to terminate his employment, which was the principal return on his corporate interest, and to transfer the corporate assets to a second, new corporation employing the Werners and their sons to continue the business *sans* Estep. Contrary to the Opinion of the Court of Appeals, the scope section in KRS Chapter 271A does not limit the duties of the shareholders in a closely-held corporation and their business dealings with minority shareholders to those expressly delineated therein. Nor does KRS 271A.205 foreclose the present action. Our Majority Opinion concedes "there may be certain nonstatutorily imposed fiduciary duties which exist among shareholders in closely-held corporations." This principle is now part of the mainstream of corporate law. Indeed, we applied it in *Aero Drapery of Kentucky, Inc. v. Engdahl*, Ky., 507 S.W.2d 166, 168 (1974). Thirty-five years ago, in *Krebs v. McDonald Ex'x*, Ky., 266 S.W.2d 87, 89 (1953), we acknowledged "shareholders in closely-held corporations bear a personal relationship to one another similar to that of a partnership."

In this Opinion our Court should embrace, as a standard of conduct reasonably owed from one co-shareholder to another in a closely-held corporation, the rule stated in *Donahue v. Rodd Electrotype Co. of New England, Inc.*, 367 Mass. 578, 328 N.E.2d 505, 515 (1975):

> "[W]e have defined the standard of duty owed by partners to one another as the [single] 'utmost good faith and loyalty.' [citations omitted]. Stockholders in close corporations must discharge their management and stockholder responsibilities in conformity with this strict good faith standard. They may not act out of avarice, expediency or self-interest in derogation of their duty of loyalty to the other stockholders and to the corporation."

The movant's Brief cites a growing number of cases, from twenty-one jurisdictions, using this standard, judicially determined. We should apply this rule to this case. The trial court properly imposed fiduciary duties of good faith and fair dealing among the shareholders of a closely-held corporation. The Court of Appeals erred in rejecting the existence of such duties.

The Majority Opinion, as did the Court of Appeals, also erred in striking down the trial court's award of punitive damages, which was based on the "self-dealing personal transactions" of the majority shareholders in violation of their "duty to disclose personal dealings which benefit them." This in turn was based on the Special Commissioner's finding in "ISSUE NUMBER 1" of "an attempt to defraud Plaintiff" by concealing payment of rental charges from the corporation to the majority stockholders. A fair reading of the Special Commissioner's fact finding is that fraud occurred but there was no loss of funds because the amount secretly charged as rent was reasonable. Where there is fraud and self-dealing of this nature, nominal damages would have been proper, and as such justify an award of punitive damages. Cf. *Island Creek Coal Co. v. Rodgers*, Ky.App., 644 S.W.2d 339 (1982).

We should reverse the Court of Appeals and reinstate the trial court's Judgment.

LAMBERT, J., joins this dissent.