COMMONWEALTH of Kentucky DEPARTMENT OF AGRICULTURE, Appellant,

v.

Donald R. VINSON; Charles Anderson; and Robert S. Peters, Secretary of the Personnel Cabinet, Appellees.

No. 1999–SC–0570–DG.

Supreme Court of Kentucky.

Oct. 26, 2000.

Mark T. Farrow, Department of Agriculture, Richard M. Guarnieri, Johnson, Judy, True & Guarnieri, Frankfort, for Appellant.

Bennett E. Bayer, Lexington, Daniel Egbers, Department of Personnel, Frankfort, for Appellees.

WINTERSHEIMER, Justice.

This appeal is from an opinion of the Court of Appeals which affirmed a judgment of the circuit court awarding a total of $1 million in punitive damages and a permanent injunction against the Department of Agriculture for violations of the Kentucky Whistleblower Act, KRS 61.101 et seq.

The questions presented are whether the Whistleblower Act is unconstitutionally vague; whether the plaintiffs are entitled to punitive damages in the absence of actual compensatory damages; whether it was error to grant a jury trial; and whether it was error to apply the amended version of the Whistleblower Act.

Vinson and Anderson worked as pesticide inspector supervisors under the Department of Agriculture and were responsible for reviewing every violation of any pesticide company in the Commonwealth. In May of 1993, their division was reorganized so as to demote Vinson and Anderson from pesticide inspector supervi-

sors back to pesticide inspectors without any salary reduction or loss of fringe benefits. In June of 1993, Vinson and Anderson filed this action seeking injunctive relief and punitive damages pursuant to KRS 61.101, et seq., the Kentucky Whistleblower Act. At that time, the statute required a showing "by clear and convincing evidence," a reporting of actual or suspected agency violations of the law, triggering the alleged state employer reprisal. Following an extensive pretrial proceeding, a trial was conducted before the circuit judge, and a jury was impaneled. The Court of Appeals labels this jury as an advisory jury. The trial judge adopted the verdict of the jury as his own and entered a permanent injunction which required the Agriculture Department to void its reorganization in regard to Vinson and Anderson; to reestablish the supervisor positions which had been eliminated and to return Vinson and Anderson to their former positions. The Court of Appeals agreed with the Department of Agriculture that Vinson and Anderson were not entitled to a trial by jury, but found no error by declaring that the jury had served in an advisory capacity only. The judgment of the circuit court was affirmed in all other respects. Despite the absence of any compensatory damages, the punitive damages were permitted. This Court accepted discretionary review.

## I. Statute Constitutional

■ KRS 61.102(1) prohibits activity that is a direct reprisal, as well as any attempts by an employer to

> directly or indirectly use, or threaten to use, any official authority or influence, in any manner whatsoever, which tends to discourage, restrain, depress, dissuade, deter, prevent, interfere with, coerce, or discriminate against any employee who in good faith reports, discloses, divulges, or otherwise brings to the attention of
> . . . .

Clearly, as argued by Vinson and Anderson, the statute recognizes the overt retaliatory act of reprisal as well as the subtle exercise of official authority or influence in the relationship between state employee and state government. The Act is not written in such broad sweeping terms as to make it constitutionally vague. A person of ordinary intelligence can understand the intended meaning of the language as well as its appropriate application.

The acts which are prohibited are described and easily understood as actions which are in response to an employee who in good faith reports or otherwise brings to the attention of an appropriate agency either violations of the law, suspected mismanagement, waste, fraud, abuse of authority or a substantial or specific danger to public safety or health. The reprisal or other retaliation occurs in response to the good faith reporting and such retaliation is done to either punish, silence or stifle a state employee. There is no inference of limiting routine contact with an employee except if it is done with an ulterior motive to punish the employee for reporting the proscribed conduct. The arguments of the Agriculture Department are without merit. This statute does not fail to provide persons with adequate notice as to what conduct is prohibited, nor does it require a person of common intelligence to guess as to its meaning. *Cf. Broadrick v. Oklahoma,* 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973), and *State Bd. for Elementary and Secondary Education v. Howard,* Ky., 834 S.W.2d 657 (1992).

■ *Boykins v. Housing Authority of Louisville,* Ky., 842 S.W.2d 527 (1992), held that KRS 61.102 was designed to protect employees from reprisals for disclosures of violations of the law. In *Howard, supra,* we reviewed a statute similar to the one upheld in Oklahoma in the *Broadrick* case, and stated that the "test has been expressed as whether a person disposed to obey the law could determine with reasonable certainty whether contem-

plated conduct would amount to a violation." Our court determined that other than an excision of the word "activities," KRS 161.164 was constitutional. We agree with Vinson and Anderson that a more narrow reading of the statute is not required with the Whistleblower Act because there is no fundamental constitutional right to retaliate against a state employee. Generally an Act shall be held valid unless it clearly offends the limitations of the constitution. *Stephens v. State Farm Mutual Automobile Insurance Co.*, Ky., 894 S.W.2d 624 (1995).

> The legislature has wide latitude and prerogative. With this also comes the presumption of validity. Those attacking the rationality of the legislative classification have the burden to negative every conceivable basis which might support it.

*Roberts v. Mooneyhan*, Ky.App., 902 S.W.2d 842 (1995). (Internal citations omitted.)

■ We find that the Department of Agriculture has not claimed that it suffered any injustice or confusion, but only that the statute might be subject to other interpretations. "The one who questions the validity of an Act bears the burden to sustain such contention. *Stephens, supra.* The same arguments were presented in *Wichita County v. Hart*, 892 S.W.2d 912 (Tex.App.Austin 1994), that the Texas statute was unconstitutional because it denied due process and was void for vagueness. The Texas Court found that it was not void for vagueness using similar legal authority found in Kentucky decisions. This Court has confirmed the application of the criminal enforcement provisions of the Whistleblower Act in *Woodward v. Commonwealth*, Ky., 984 S.W.2d 477 (1999).

Although the term "personnel action" is not defined by the statute, we agree with the Court of Appeals that the breadth of the statute is limited by the exclusions contained in KRS 61.102(3), which clearly delineate the duty of an employee to behave responsibly and honestly in employee relations. We agree with the Court of Appeals that in examining the text of the legislation in its entirety and the manner in which it was construed by the trial judge, we cannot conclude that the Act is so vague as to be rendered void. KRS 61.102 is neither void nor vague and, consequently, it is constitutional. It does not violate the due process requirements under the state and federal constitutions.

## II. Punitive Damages

■ KRS 61.103(2) provides that employees alleging a violation of KRS 61.102(1) or (2) may bring a civil action for appropriate injunctive relief or punitive damages or both. KRS 61.990(4) states that the Court "shall order, as it considers appropriate, reinstatement of the employee, the payment of back wages, full reinstatement of fringe benefits and seniority rights, exemplary or punitive damages, or any combination thereof." It is clear that the General Assembly intended that punitive damages might be awarded in addition to equitable relief or separately.

The Department of Agriculture argues that Vinson and Anderson were not entitled to punitive damages in the absence of actual compensatory damages. They contend that the punitive damages provision of the Act should be interpreted in harmony with the Kentucky common law of punitive damages. They assert that the legislature did not intend to change the common law because the statute contains no language expressly declaring such a change.

The undisputed evidence demonstrates that Vinson and Anderson did not suffer a loss of wages or fringe benefits. The Department of Agriculture maintains that the trial judge erred in instructing the jury on punitive damages in the absence of compensatory damages. We disagree. In support of its argument, they cite 24 cases from other jurisdictions as well as *Estep v. Werner*, Ky., 780 S.W.2d 604 (1989); *Karst–Robbins Coal Co., Inc. v. Arch of*

*Kentucky, Inc.,* Ky.App., 964 S.W.2d 419 (1997) and *Lawrence v. Risen,* Ky.App., 598 S.W.2d 474 (1980). *Estep, supra,* and *Karst–Robbins, supra,* relied on the earlier case of *Risen, supra,* which in turn cited *Louisville & N.R. Co. v. Ritchel,* 148 Ky. 701, 147 S.W. 411 (1912).

*Ritchel, supra,* states in part that a verdict for punitive damages only will not be set aside because the jury failed to return a verdict for compensatory damages. Where the plaintiff has suffered an injury for which compensatory damages, though nominal in amount may be awarded, the jury may in a proper case, award punitive damages as well. The *Ritchel* court stated as follows:

> It is true that there are respectable authorities which appear to hold that punitive damages cannot be awarded when the actual injury is merely nominal. In our opinion, however, this view is not correct, and does not agree with a great weight of authority. The correct rule, we think, is that if a right of action exists; that is, if the plaintiff has suffered an injury for which compensatory damages might be awarded although nominal in amount, he may in a proper case recover punitive damages....[T]he fact that the jury returned a verdict for punitive damages only, furnishes no just reason why the verdict should not be allowed to stand, since, under the rule in force in this State, punitive damages, when allowed, are given as compensation to the plaintiff and not solely as punishment of the defendant.

*Ritchel.* (Internal citations omitted.) It is clear that Kentucky follows the rule that it is the invasion of a right which entitles a person to legal compensation.

We are also persuaded by the reasoning of *Nappe v. Anschelewitz,* 97 N.J. 37, 477 A.2d 1224 (1984), that compensatory damages are not an essential element of an intentional tort committed willfully and without justification. The mere fact that no compensatory damages were awarded

to Vinson or Anderson does not mean that they did not have compensable injuries. The fact that there is not a quantifiable monetary damage awarded for lost pay does not mean that injury did not occur.

The trend throughout this nation is to allow recovery for punitive damages in an equitable action. *See Black v. Gardner,* 320 N.W.2d 153, (S.D.1982). The absence of a showing of actual damages need not bar an award of punitive damages. *Village of Peck v. Denison,* 92 Idaho 747, 450 P.2d 310 (1969); *See also Nash v. Craigco, Inc.,* 585 P.2d 775 (Utah 1978). We agree.

Here, the circuit court awarded Vinson and Anderson equitable relief, including monetary judgment for their costs and expenses after he determined that there had been a violation of the Whistleblower Act and the plaintiffs had been injured. It has been held that even without express statutory authority to award punitive damages, equitable damages clearly satisfy any requirement of damages. *Gill v. Manuel,* 488 F.2d 799 (9th Cir.1973). Even in those jurisdictions where it has been held that the award of compensatory damages is generally a requisite to punitive damages, the law is that "the granting of affirmative equitable relief will support an award of punitive damages." *Indiana and Michigan Electric Co. v. Harlan,* 504 N.E.2d 301, (Ind.App. 1st District 1987). The express language of KRS 61.103(2) states that an employee may bring a civil action for injunctive relief or punitive damages. KRS 61.990(4) allows the court to award separate categories of damages, including punitive damages or any combination thereof. We reject the argument that these statutes simply list punitive damages as one of several remedies potentially available to a successful litigant. Here there is a factual basis for a possible award of actual compensatory damages although not given in this case. The common law of Kentucky does not provide a basis for defeating the judgment in question. The Whistleblower Statute is sufficiently explicit in regard to punitive damages. The

authorities of *Ream v. Dept. of Revenue,* Ky., 314 Ky. 539, 236 S.W.2d 462 (1951) and *Cincinnati, N.O. & T.P. R. Co. v. Wilson's Adm'r,* 161 Ky. 640, 171 S.W. 430 (1914) are not applicable. The punitive damages provision of the Whistleblower Act is in harmony with the Kentucky common law as to punitive damages.

### III. Jury trial

■ The trial judge did not commit error by impaneling a jury for this case. Objection to the jury trial was raised by the Department of Agriculture and at a pretrial conference on February 20, 1997, the trial judge stated that the jury would be used to find factual allegations. "Now, when it comes down to, assuming that Mr. Vinson and Mr. Anderson prevail, in terms of fashioning a remedy, there are various equitable remedies and that would be my job." Later, on March 4, 1997, at another pretrial conference, the trial judge stated that punitive damages is something that a jury would be consulted on. Vinson and Anderson had been seeking a jury trial but the Department of Agriculture objected.

The findings of fact set out that the jury was impaneled to hear factual allegations and that the jury would render a verdict on the issue of punitive damages. All other issues were reserved for a final determination by the trial judge. The trial judge adopted the verdict of the jury and affirmed the findings of the jury as his own. KRS 61.102 represents a statutorily created cause of action and did not expressly provide for or deny the right to trial by jury. Agriculture argues that there is no entitlement to a jury trial, citing a number of Kentucky cases. The Court of Appeals agreed with this position but held that there was no error because the jury had served only in an advisory capacity. Agriculture argues that the record does not support the determination by the Court of Appeals that the jury was only advisory or that it consented to such an arrangement. Agriculture contends that the parties must be advised prior to

trial that a jury will be advisory citing CR 39.03.

It is our view that the Department of Agriculture received a fair trial. The error, if any, committed by the trial judge was harmless and nonprejudicial. The trial judge adopted the findings of the jury as his own and there were a variety of post-trial motions to have the judgments set aside, all of which the trial judge denied. The trial judge did not take this case away from the jury, but he allowed both sides to present their proof, and to argue the case fully

Here, the jury was properly instructed. During the pretrial process the trial judge stated that the jury would be consulted on the issue of damages but that he would ultimately decide the case.

The question of impaneling a jury has been considered by this Court in *Meyers v. Chapman Printing Co., Inc.,* Ky. 840 S.W.2d 814 (1992), where claims were raised pursuant to KRS 344.450. The statute did not expressly provide for a jury trial, but this Court held that the Kentucky Constitution, Section Seven, preserved the ancient mode of trial by jury, and that the constitution guarantees a trial by jury in cases of this character. We held that a cause of action under the Kentucky Civil Rights Act is a damages suit like any other and that once a cause of action for damages to be tried in the courts of this Commonwealth has been created by statute, a further provision providing that a party shall have a right to trial by jury is surplusage.

In *Anzaldua v. Band,* 457 Mich. 530, 578 N.W.2d 306 (1998), the Michigan Supreme Court determined that the plaintiff was entitled to a trial by jury in interpreting a Michigan Whistleblower Statute. The question there was whether the silence of the legislature in providing a trial by jury was an inference that the legislature did not intend for jury trials in such cases. In that case, the defendants argued that the language of the Michigan statute that "a

court" rather than a jury would make the award was dispositive. *Band, supra,* held that the right to trial by jury under the Whistleblower's Protection Act depends on the nature of the claim made and the relief sought. "Where 1) an action by its nature is not jury barred, 2) the claim is for money damages, 3) the legislature provided for it to be brought in circuit court, and 4) the legislature did not deny the right to a trial by jury, the plaintiff properly may demand a jury trial." The Michigan Supreme Court distinguished *Feltner v. Columbia Pictures Television, Inc.,* 523 U.S. 340, 118 S.Ct. 1279, 140 L.Ed.2d 438 (1998). *Columbia Pictures Television, supra,* held that a jury trial can be had in a copyright damage case even when the claims, the rights and remedies are created by statute. Although this case is based on the 7th amendment to the United States Constitution, it accords well with the reasoning we apply here.

*See also Frizzell v. Southwest Motor Freight,* 154 F.3d 641 (6th Cir.1998), in which the Sixth Circuit Court of Appeals held that the Family Medical Leave Act permits a right to jury trial even though it does not expressly provide for such a right. The major focus to be made when determining whether a right to jury trial exists is the nature of the relief sought. *Cf. Hildebrand v. Bd. of Trustees of Michigan State University,* 607 F.2d 705 (1979).

We find *Band, Southwest Motor Freight, supra,* and *Bd. of Trustees of Michigan State, supra,* to be of value in reaching our conclusion. In the case before us, Vinson and Anderson sought damages and were awarded monetary sums in addition to reinstatement and restoration of benefits. Under all the circumstances, they were entitled to a trial by jury. It was not prejudicial error for the trial judge to consider the jury impaneled as an advisory jury when he adopted the findings of that jury as his own.

IV.  1993 Amendment not applicable.

■ The 1993 amendments to KRS 61.102 were enacted by the General As-sembly in a 1993 first extraordinary session and signed into law by the Governor on February 18, 1993. The Department of Agriculture reorganized the division of pesticides so as to eliminate the supervisory positions of Vinson and Anderson effective May 16, 1993. On June 18, 1993, Vinson and Anderson filed suit in Franklin Circuit Court alleging violation of the Whistleblower Statute. The case was not tried until March 1997. The effective date of the amendment to KRS 61.103(3) was September 16, 1993.

■ Kentucky law prohibits the amended version of a statute from being applied retroactively to events which occurred prior to the effective date of the amendment unless the amendment expressly provides for retroactive application. KRS 446.080(3). *Kentucky Industrial Utility Customers, Inc. v. Kentucky Utilities Company,* Ky., 983 S.W.2d 493 (1998). This is a very fundamental principle of statutory construction in Kentucky. The courts have consistently upheld this admonition and have declared there is a strong presumption that statutes operate prospectively and that retroactive application of statutes will be approved only if it is absolutely certain the legislature intended such a result. This is particularly true when the legislation is substantive and not remedial, and new rights and new duties are created. We choose to cite only two of the many cases that confirm that principle. They are *Gould v. O'Bannon,* Ky., 770 S.W.2d 220 (1989) and *Hudson v. Commonwealth,* Ky., 597 S.W.2d 610 (1980).

■ Amendments which change and redefine the out-of-court rights, obligations and duties of persons in their transactions with others are considered to be changes in substantive law and come within the rule that statutory amendments cannot be applied retroactively to events which occurred prior to the effective date of the amendment. *Benson's Inc. v. Fields,* Ky., 941 S.W.2d 473 (1997). Those amend-

ments which apply to the in-court procedures and remedies which are used in handling pending litigation, even if the litigation results from events which occurred prior to the effective date of the amendment, do not come within the rule prohibiting retroactive application. *Peabody Coal Co. v. Gossett,* Ky., 819 S.W.2d 33 (1991). This Court has held it improper to apply statutory amendments in a situation where the amendment changed the substantive rights and duties of litigants regarding those events which had occurred prior to the effective date of the amendment. *See e.g. Kentucky Utilities Co., supra; O'Bannon, supra; Fields supra Leeco, Inc. v. Crabtree,* Ky., 966 S.W.2d 951 (1998).

The amendment to KRS 61.103 changed the substantive rights of employees and the obligations of employers. The amendment changed the causation and weight of evidence components as to what an employee is required to prove successfully to support a claim under the Act. The amendment also required a new burden of proof from the employer in order to successfully defend a claim under the law.

The changes in causation and weight of evidence were changes in substantive law. Under the prior version of the statute, an employee had to prove that the report or threat to report a suspected violation of the law was a direct cause of the reprisal by the employer. This had to be proven by clear and convincing evidence. Under the amended version of KRS 61.103, the evidence required to prove causation is reduced and the employee now only has to prove that the report or threat to report a suspected violation of law was simply a contributing factor in a personnel action involving the employee. This must only be proven by a preponderance of evidence.

The change in the burden of proof was also a change in substantive law. Under the earlier version of KRS 61.103, the employer had no burden of proof. Under the amended version, the employer now has an affirmative burden of proving by clear and convincing evidence that the report was not a material fact in the personnel action. The amended version of the statute clearly provides for new legal consequences as a result of certain types of employer conduct which did not have any legal significance prior to amendment of the statutes.

Two cases which involve amendments to the federal Whistleblower Statute are of persuasive significance here. The federal Act is similar to the Kentucky Act in almost every respect. *Taylor v. Federal Deposit Ins. Corp.,* 132 F.3d 753 (D.C.Cir. 1997) and *Walleri v. Federal Home Loan Bank of Seattle,* 965 F.Supp. 1459 (D.Ore. 1997), both hold that the amendments changed the substantive law and should not be applied retroactively to events which had occurred prior to the effective date of the amendment. The federal amendment changed the causation component of the law and established a new burden of proof on the employer. Prior to the amendment, an employee had to prove direct causal connection between his report and the reprisal. Since the amendment, an employee has only to prove that his report was a contributing factor in a personnel action taken by the employer. Moreover, prior to the amendment, an employer had the burden of proving by a preponderance of the evidence a legitimate, nonretaliatory reason for the employment action. Since the amendment, the employer has to prove by clear and convincing evidence that it would have taken the same action even in the absence of the employee's report.

Although there is no Kentucky case to substantiate the proposition that laws relating to the burden of proof constitute substantive law and not procedural law, we find that other jurisdictions have so concluded. *See Garrett v. Moore–McCormack Co.,* 317 U.S. 239, 63 S.Ct. 246, 87 L.Ed. 239 (1942); *Cities Service Oil Co. v. Dunlap,* 308 U.S. 208, 60 S.Ct. 201, 84 L.Ed. 196 (1939); *Central Vermont Railway Co. v. White,* 238 U.S. 507, 35 S.Ct. 865, 59 L.Ed. 1433 (1915); *Southern Railway Co.*

*v. Miller,* 285 F.2d 202 (6th Cir.1960). We agree.

Here, the amendments to the Whistleblower Act changed the facts required to establish a viable cause of action. It allows an employee different rights with regard to actions taken by the employer. It establishes different legal obligations on the employer as to actions involving employees. The amendment changes the substantive law. The amended statute did not accurately present the legal rights of Vinson and Anderson at the time of the alleged events and the amended statute does not accurately represent the legal duties of the Department of Agriculture at the same time. Consequently the liability of the Department of Agriculture, if any, should have been determined by using the original version of the Whistleblower Act which was in effect at the time of the events. This should not preclude the presentation of any violations of the Act that occurred after the adoption of the amendment.

It should be abundantly clear that the duties imposed on the Department of Agriculture under KRS 61.102 did not change. Reprisals against public employees for actual disclosures or attempt to disclose violations of the law were prohibited before 1993 and are also prohibited after September of 1993. There is no doubt that it was the intent of the legislature that the "public confidence in the integrity of state government and its officials" be maintained and that underlying basis for both the original Act and the amendment remains in effect.

However, in order to avoid the retroactive effect of the amendment it is the duty of this Court to reverse the judgment of the trial court and remand this case for a new trial under the original version of the Whistleblower Act as to those events that occurred at that time.

It is the holding of this Court that KRS 61.101 et seq., commonly known as the Whistleblower Act is constitutional and that the language of the original Act and the amendments thereto are not void for vagueness. Punitive damages as provided by the Act can be awarded in the absence of compensatory damages and questions arising under the statute can be tried by a jury.

The opinion of the Court of Appeals and the judgment of the circuit court are reversed and this matter is remanded to the circuit court for a new trial under the original version of the Act.

LAMBERT, C.J., COOPER, GRAVES, KELLER, STUMBO and WINTERSHEIMER, JJ., concur.

JOHNSTONE, J., files a separate opinion concurring in part, dissenting in part.

JOHNSTONE, Justice, concurring in part and dissenting in part.

I concur with the majority opinion as to the constitutionality of the statute, the awarding of punitive damages, and the application of the amended statute, but conclude that the trial judge committed error in granting a trial by jury.

While the right to trial by jury is guaranteed by Section 7 of the Kentucky Constitution and governed by Rules 38 *et seq.,* of the Kentucky Rules of Civil Procedure, it is limited to those common-law matters to which a jury trial existed in 1791. *Johnson v. Holbrook,* Ky., 302 S.W.2d 608, 611 (1957). KRS 61.101 *et seq.,* commonly known as the Kentucky Whistleblower Act, created a statutory cause of action which did not exist prior to 1986. Two issues must therefore be addressed: (1) whether the act itself authorizes trial by jury in actions of this type; and (2) whether actions brought under the act are analogous to any action available under common law, thus invoking the right to trial by jury.

The Court of Appeals was correct when it stated that "the act implies that an employee filing an action under the statute is to have his claim adjudicated by the court." *Commonwealth v. Vinson,* Ky.

App., 1997–CA–001877–MR at 23 (rendered February 12, 1999). The language of the act is clear in this respect, not only making no mention of a right to trial by jury, but specifically addressing the role of the court in such actions:

> *A court, in rendering a judgment* in an action filed under KRS 61.102 and 61.103, *shall order, as it considers appropriate,* reinstatement of the employee, and the payment of back wages, full reinstatement of fringe benefits and seniority rights, exemplary or punitive damages, or any combination thereof. *A court may also award* the complainant all or a portion of the costs of litigation, including reasonable attorney fees and witness fees.

KRS 61.990(4) (emphasis added).

The language used evinces the legislature's intent to have such matters adjudicated solely by the court, and does not support the right to a jury trial. This Court has previously held that "where a right is created by statute and committed to an administrative forum, jury trial is not required." *Kentucky Commission on Human Rights v. Fraser,* Ky., 625 S.W.2d 852, 854 (1981); *see also Mays v. Department for Human Resources,* Ky.App., 656 S.W.2d 252, 253 (1983). To interpret the act as containing an implied requirement for trial by jury not only departs from previous pronouncements by this Court, but likewise contorts the language of the statute.

In order for the statutory language to be consistent with the majority's interpretation, there would need to be some analogy for the Whistleblower Act in the common law. The majority draws such an analogy in the premise that a cause of action for damages, even under a specific statute, is like any damage suit under common law, thus appropriate for trial by jury. *Meyers v. Chapman Printing Co., Inc.,* Ky., 840 S.W.2d 814, 819 (1992). Such a standard, however, would allow any plaintiff to claim the right to trial by jury merely by asking for damages. The proper approach is for the trial court to evaluate "the true nature and effect of the basic issues raised by the claims and the defenses and the relief which may be granted to the parties." *Johnson, supra,* at 610. Such analysis reveals that the cause of action in the case at bar is equitable in nature, a conclusion even the Court of Appeals implicitly embraces. *Commonwealth v. Vinson, supra,* at 25.

In my opinion, there is no analogy for the Whistleblower Act to be found in the common law. Prior to enactment of the statute, a state employee who suffered such reprisal and discrimination such as that established in this case had no legal cause of action; at best, the employee had an equitable claim. As no right to trial by jury would have been possible under the common law, and none is authorized by the language of the statute, it was error for the court to grant this right.

As for the Court of Appeals' characterization that such jury was advisory in nature, the record shows that it was not designated as such until the trial court adopted the jury's findings as its own. Thus, the court allowed the jury to usurp the fact-finding obligation that the Whistleblower Act assigns to the trial judge alone. Considerations of fundamental fairness, as well as the extra-jurisdictional cases cited within Appellant's brief, convince me that this Court should hold that empaneling an advisory jury under Rule 39.03 of the Kentucky Rules of Civil Procedure at the very least requires some contemporaneous designation of the jury as such by the court.

I would reverse the Court of Appeals on the jury issue and remand this case for retrial consistent with this Opinion.